IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MATTHEW STELLY, and CHERYL WILLIAMS, | ) ) ) | 8:14CV170 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | **MEMORANDUM AND ORDER** |
| ROBERT PETERS, JAMES THELE, MIKE SAKLAR, MARTIN SHUKERT, and JOHN REHTMEYER, | ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on review of Plaintiffs Cheryl Williams and Matthew Stelly's Complaint (Filing No. 1) and Amended Complaint (Filing No. 11) (together, "complaints"). Plaintiffs were granted leave to proceed in forma pauperis in this matter. The court now reviews the complaints in accordance with 28 U.S.C. § 1915(e).

## I. BACKGROUND

### A. Summary of Complaint

Plaintiffs filed their Complaint (Filing No. 1) against various members of the City of Omaha Planning Department ("planning department"). Plaintiffs purported to bring their action under the Program Fraud Civil Remedies Act of 1986, 31 U.S.C. §§3801-3812 ("PFCRA"). They also alleged various instances of employment discrimination in the Complaint, though it was not clear whether they were the subjects of the discrimination referenced in the Complaint. Plaintiffs generally alleged in the Complaint that the planning department was "responsible for the theft

of over $200 million" because it had not used grant money it received from the federal government to redevelop the north side of Omaha. (Filing No. 1 at CM/ECF p. 2.)

**B.     Findings on Initial Review**

The court conducted an initial review of the Complaint on August 19, 2014. (Filing No. 10.) The court determined the Complaint did not comply with general pleading requirements because it did not give Defendants fair notice of the claims against them. In addition, the court determined Plaintiffs could not rely on the PFCRA to recover against Defendants. *See Orfanos v. Dep't of Health and Human Servs.*, 896 F.Supp. 23, 24-25 (D.D.C. 1995) ("The [PFCRA] was enacted in 1986 to allow federal departments and agencies . . . to pursue administrative actions . . . for false, fictitious or fraudulent claims for benefits or payments under a federal agency program.").

The court gave Plaintiffs 30 days in which to amend their Complaint. Plaintiffs filed an Amended Complaint (Filing No. 11) on September 22, 2014. A discussion of Plaintiffs' Amended Complaint follows. The court will discuss the claims pertaining to each Plaintiff separately.

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e)(2). The court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted).

### III. DISCUSSION OF CLAIMS MADE BY CHERYL WILLIAMS

**A.    Race Discrimination**

Williams alleged in the Amended Complaint that she worked for the planning department for 23 years. (Filing No. 11 at CM/ECF p. 5.) In July 2010, her superiors demoted her to a position held by individuals who had only worked for the department for five years. Williams also alleged that on July 19, 2011, "[i]nformation [was] revealed that jobs that [she] was qualified for went to less qualified whites." (Filing No. 11 at CM/ECF p. 8.)

These bare allegations do not state plausible employment discrimination claims. Both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, and 42 U.S.C. § 1981 require plaintiffs to demonstrate that defendants intentionally discriminated against them on the basis of race.[1] Plaintiff does not allege

---

[1]Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

3

that she was demoted because of her race. In addition, she does not allege that she applied for but was denied employment opportunities because of her race. Rather, she offered only a general assertion that "jobs that [she] was qualified for went to less qualified whites." This allegation is insufficient to give Defendants "fair notice of the nature and basis or grounds" for her claims against them. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) ("The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.") (internal quotation marks omitted).

Moreover, as to any claims brought under Title VII, a plaintiff is required to exhaust administrative remedies by first seeking relief through the Equal Employment Opportunity Commission ("EEOC") or the Nebraska Equal Opportunity Commission ("NEOC"). The EEOC/NEOC will then investigate the charge and determine whether to file suit on behalf of the charging party or make a determination of no reasonable cause. If the EEOC/NEOC determines that there is no reasonable cause, the agency will then issue the charging party a right-to-sue notice. 42 U.S.C.A. § 2000e-5(f)(1); *see also Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 573 (8th Cir. 1997). The charging party has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on her charge. 42 U.S.C.A. § 2000e-5(f)(1).

Here, Williams has not attached a right-to-sue letter from the EEOC/NEOC. Thus, it is unclear whether she has exhausted her administrative remedies and filed

---

of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Title 42 U.S.C. § 1981 provides in pertinent part: "All persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

4

suit in a timely manner in this court. On the court's own motion, the court will give Williams 30 days in which to file an amended complaint that sets forth employment discrimination claims upon which relief may be granted. Any amended complaint filed by Williams must also set forth whether she exhausted her administrative remedies with the EEOC/NEOC with respect to her Title VII claims and, if so, the date on which she received a right-to-sue notice. To the extent Williams did receive a right-to-sue notice from the EEOC/NEOC, but did not file suit within 90 days of its receipt, she must show that equitable or exceptional circumstances exist that warrant tolling of the 90-day period.

**B.     Disability Discrimination**

Williams also alleged her superiors violated the Americans with Disabilities Act ("ADA") when they forced her to stand on her feet for hours photocopying while she suffered from "spinal and knee issues." (Filing No. 11 at CM/ECF p. 9.)

The ADA provides that:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). A person is disabled within the meaning of the ADA only if she demonstrates that she has a physical or mental impairment that substantially limits one or more of her major life activities, that she has a record of such an impairment, or that she is regarded as having such an impairment. *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999).

Here, Williams alleged only that she suffered from "spinal and knee issues" and she was "assigned photocopying assignments." Williams did not plead factual content

that would allow the court to draw the reasonable inference that Defendants discriminated against her on the basis of a disability or that she is a disabled person within the meaning of the ADA.

In addition, before a plaintiff may file a complaint in federal court alleging violations of the ADA, she must first exhaust her administrative remedies. See [42 U.S.C. § 12117(a)](#) (stating that the remedies and procedures set forth in Title VII, including those pertaining to exhaustion, apply to disability discrimination claims). As discussed above, exhausting administrative remedies requires timely filing a charge with the EEOC or NEOC and receiving a right-to-sue letter.

Here, Williams has not attached a right-to-sue letter from the EEOC/NEOC. Thus, it is unclear whether she has exhausted her administrative remedies and filed suit in a timely manner in this court with respect to her ADA claims. As set forth above, Williams will have 30 days in which to file an amended complaint that sets forth employment discrimination claims upon which relief may be granted. Any amended complaint filed by Williams must also set forth whether she exhausted her administrative remedies with the EEOC/NEOC with respect to her ADA claims and, if so, the date on which she received a right-to-sue notice. To the extent Williams did receive a right-to-sue notice from the EEOC/NEOC, but did not file suit within 90 days of its receipt, she must show that equitable or exceptional circumstances exist that warrant tolling of the 90-day period.

## C. False Claims Act

Liberally construed, Williams made reference to the False Claims Act ("FCA") in the Amended Complaint. (*See* Filing No. 11 at CM/ECF p. 3 ("[Williams] has maintained copious notes and is protected by the Fair [sic] Claims Act, which allows whistleblowers – referred to as [] relators – to sue those who they believe to be defrauding the government.").) She alleged the City of Omaha received federal grant money for community development, but failed to use it to develop the north side of Omaha.

The FCA "imposes liability on those who present false claims, or cause false claims to be presented, to the government for payment or approval; use false statements, or cause false statements to be used, to get a false claim paid or approved by the government; or conspire to defraud the government, among other things." *United States ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). Under the Act's qui tam provision, private persons, or relators, may "sue for violations 'in the name of the government' and recover a share of the proceeds if the suit is successful." *Id*. (quoting 31 U.S.C. § 3730(b), (d)). To state a prima facie case under the Act, the relator must show "(1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *Id.* (quoting *United States v. Basin Elec. Power Coop.*, 248 F.3d 781, 803 (8th Cir. 2001)). Additionally, for liability to attach, the fraudulent claim must be "material" to the government's decision to disperse money. *United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 796 (8th Cir. 2011).

Williams did not allege Defendants made material false claims for payment to the federal government. Rather, her allegations suggest she merely disagreed with how the City of Omaha chose to spend the grant money it received from the federal government. Even construing the Amended Complaint liberally, it does not contain allegations reasonably suggesting a valid FCA claim against Defendants. Moreover,

*pro se* relators may not prosecute qui tam actions. *United States ex rel. Mergent Services v. Flaherty*, 540 F.3d 89, 93 (2nd Cir. 2008); *Timson v. Sampson*, 518 F.3d 870, 873-74 (11th Cir. 2008) (per curiam); *United States ex rel. Lu v. Ou*, 368 F.3d 773, 775-76 (7th Cir. 2004); *United States v. Onan*, 190 F.2d 1, 6 (8th Cir. 1951).

### IV. DISCUSSION OF CLAIMS MADE BY MATTHEW STELLY

Stelly alleged he was denied employment with the planning department "Despite [his] Superior Credentials." (Filing No. 11 at CM/ECF p. 9.) Stelly alleged he applied for positions in 1980 and 1986. (*Id.* at CM/ECF pp. 7-8.) According to Stelly, "[s]cores of individuals, throughout the 1980s to the present, have been hired by [the planning department] with credentials inferior to [his]." (*Id.* at CM/ECF p. 9.)

As set forth above, both Title VII and 42 U.S.C. § 1981 require plaintiffs to demonstrate that defendants intentionally discriminated against them on the basis of race. Stelly's bare allegations do not allow the court to draw the reasonable inference that Defendants did not hire him because of his race. It is not clear whether Stelly belongs to a protected class, though the court can reasonably infer that Stelly is African-American. Even so, Stelly did not allege that any less qualified individual outside of his protected class was considered or hired for any specific positions for which he applied.

In addition, as with Williams's Title VII claims, Stelly did not set forth whether he properly exhausted his administrative remedies and filed suit within 90 days of receiving a right-to-sue notice from the EEOC/NEOC. On the court's own motion, the court will give Stelly 30 days in which to file an amended complaint that sets forth employment discrimination claims upon which relief may be granted. Any amended complaint filed by Stelly must also set forth whether he exhausted his administrative remedies with the EEOC/NEOC with respect to his Title VII claims and, if so, the date

on which he received a right-to-sue notice. To the extent Stelly did receive a right-to-sue notice from the EEOC/NEOC, but did not file suit within 90 days of its receipt, he must show that equitable or exceptional circumstances exist that warrant tolling of the 90-day period.

Finally, as best as the court can tell from Stelly's allegations, the instances of employment discrimination of which he complains occurred in the 1980s. Stelly's claims are governed by Nebraska's four-year statute of limitations.[2] *See* Neb. Rev. Stat. § 25-207. Because Stelly filed suit approximately 20 years after the alleged acts of discrimination occurred, Stelly must show cause why his section 1981 claims should not be dismissed for failure to file suit within the relevant four-year limitations period.

IT IS THEREFORE ORDERED that:

1. Williams will have 30 days in which to file a second amended complaint that sets forth employment discrimination claims upon which relief may be granted. Any amended complaint filed by Williams must also set forth whether she exhausted her administrative remedies with the EEOC/NEOC with respect to her Title VII and

---

[2] As the Eleventh Circuit Court of Appeals explained in *Edwards v. Nat'l Vision Inc.*, 568 Fed. App'x 854 (11th Cir. 2014):

> Section 1981 does not contain an express statute of limitations. Prior to 1990, federal courts applied the most analogous state statute of limitations. Under 28 U.S.C. § 1658, a four-year statute of limitations is provided for claims arising under an act of Congress enacted after December 1, 1990, that did not include a statute of limitations. For causes of action existing before the 1990 enactment, the practice of borrowing the state statute of limitations applies.

*Id.* at 860 (internal citations omitted).

ADA claims and, if so, the date on which she received a right-to-sue notice. To the extent Williams did receive a right-to-sue notice from the EEOC/NEOC, but did not file suit within 90 days of its receipt, she must show that equitable or exceptional circumstances exist that warrant tolling of the 90-day period.

2. Stelly will have 30 days in which to file a second amended complaint that sets forth employment discrimination claims upon which relief may be granted. Any amended complaint filed by Stelly must also set forth whether he exhausted his administrative remedies with the EEOC/NEOC with respect to his Title VII claims and, if so, the date on which he received a right-to-sue notice. To the extent Stelly did receive a right-to-sue notice from the EEOC/NEOC, but did not file suit within 90 days of its receipt, he must show that equitable or exceptional circumstances exist that warrant tolling of the 90-day period. In Stelly's second amended complaint, Stelly must also show cause why his section 1981 claims should not be dismissed for failure to file suit within the relevant four-year limitations period.

3. **<u>Plaintiffs are directed to file two separate second amended complaints</u>**. Because Plaintiffs' remaining claims—*i.e.*, their employment-discrimination claims—appear to be separate and distinct, the court will likely order their claims severed if both sets of claims survive initial review.

4. Either Plaintiffs' failure to file a second amended complaint in accordance with this Memorandum and Order will result in dismissal of this action as to such Plaintiff without further notice.

5. The clerk's office is directed to set a pro se case management deadline using the following text: December 22, 2014: check for second amended complaint.

DATED this 21st day of November, 2014.

BY THE COURT:

*s/ John M. Gerrard*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

11